BARTLETT et al. v. LASHLEY.

No. 33768.   Feb. 6, 1951.

Rehearing Denied March 27, 1951.

*229 P. 2d 185.*

Glenn O. Young and Moraul Bosonetto, both of Sapulpa, for plaintiffs in error.

Edmund Lashley and Miriam Lashley, both of Tulsa, and L. K. Pounders of Bristow, for defendant in error.

ARNOLD, C.J. This action involves the surface rights only to 160 acres of land in Creek county, Oklahoma, described as: West Half of Northeast Quarter; Northeast Quarter of Northwest Quarter; and Northwest Quarter of Southeast Quarter, Section 27, Township 14 North, Range 8 East.

Essential facts disclosed by the evidence are:

That for a number of years prior to 1930 the fee-simple title to this land was held jointly by H. W. Bartlett, Eva Maude Bartlett, and H. E. Whitehead, as tenants in common; that they severed the mineral estate and received royalties from oil production thereon, and that such royalties are still being paid to various owners of mineral interests; that in May, 1930, pursuant to a resale for delinquent taxes, the surface rights to this 160 acres became vested in Creek county through a resale deed to the chairman of its board of county commissioners; that no question is raised as to the regularity of the tax sale proceedings, nor as to the validity of the resale tax deed; that in June, 1930, M. Schuman and R. J. Ranck acquired these surface rights by a commissioner's deed and subsequently Ranck transferred his interest to Schuman; that in August, 1931, Schuman delivered a quitclaim deed to the land to Martin Bartlett, who is a son of H. W. and Eva Maude Bartlett, but this deed was not recorded until April, 1935; that in September, 1931, the First National Bank & Trust Company of Tulsa secured a sheriff's deed purporting to cover the interest of H. E. Whitehead in this property by virtue of execution based upon a judgment obtained by the bank prior to the tax resale in 1930; that on November 7, 1933, Shuman delivered a quitclaim deed to the land to the plaintiff, Theodore G. Lashley, which deed was duly recorded on November 8, 1933; that during the time when the land was owned by the Bartletts and Whitehead, Whitehead acted as the agent of the owners in renting and collecting the rents on this land; that in 1920 he made a rental contract with an elderly negro named J. J. Sherman, who went into possession and continued under said rental contract to occupy and cultivate the land until the tax resale of 1930, and thereafter remained in the occupancy of the premises during 1931, 1932, and 1933; that on January 11, 1934, plaintiff Lashley rented the land to a tenant who went into possession under a written contract; that in August, 1934, Lashley secured a quitclaim deed from the First National Bank & Trust Company of Tulsa covering the one-third interest therein originally owned by H. E. Whitehead; that from the time plaintiff took possession of the land in January, 1934, he continued in the possession and control thereof through tenants to the date of trial of this action, and that he paid all of the taxes assessed against

the land from 1930 to the date of trial; that on April 19, 1937, Martin Bartlett and his wife executed a deed to the land to Merrill S. Bartlett, Martin's brother, and on March 9, 1943, Merrill S. Bartlett executed a deed to the land to Jane A. Bartlett, wife of Chester W. Bartlett, another brother of Martin; that neither Martin Bartlett nor Merrill Bartlett were ever in possession of the land after January, 1934, and neither collected any rents or profits or paid any taxes thereon; that in 1946 plaintiff was negotiating a sale of this land and for the first time discovered the recorded deed from Schuman to Martin Bartlett and the deeds among the Bartletts purporting to transfer title to the land; that he then sought to obtain a quitclaim deed from Jane A. Bartlett and her husband but they refused to execute the same and thereupon this action to quiet title was commenced.

In plaintiff's petition he asserted title to the surface of the land under his quitclaim deed from Schuman and denied the validity of the Schuman deed to Martin Bartlett as notice to him by reason of its not having been recorded, and asserts that he is an innocent purchaser for value without notice and that he has been in open, notorious, and adverse possession of the land since January, 1934, under color of title and sought to have his title quieted.

The amended answer and cross-petition of the defendants Jane A. Bartlett and Chester W. Bartlett denied generally the allegations of plaintiff's petition and affirmatively alleged that plaintiff had full knowledge of the interest of Martin Bartlett and of his possession of said property at all times. It was further asserted that the quitclaim deed from Schuman to Lashley was void for champerty and conveyed no title or interest to the plaintiff. Defendants sought in their cross-petition to have their title quieted.

Upon trial of the action to the court findings of fact were made on which judgment was entered quieting plaintiff's title and denying any relief to defendants under their cross-petition.

Defendants contend that plaintiff cannot claim he is an innocent purchaser for value for three reasons:

First, because plaintiff had actual knowledge of the possession of Martin Bartlett and therefore constructive notice of his claim.

Second, because of the inadequacy of the consideration paid to Schuman.

Third, he knew his grantor Schuman was not in possession of the land.

Their contention that plaintiff had actual knowledge of possession by Martin Bartlett is based upon an assumption of fact not sustained by the evidence. The only basis for this assumption is the occupancy of the land by J. J. Sherman under the contract which he made with H. E. Whitehead in 1920, but the tax resale and the resale deed issued pursuant thereto wiped out any right, title, or interest of the original owners, including H. E. Whitehead, so that Sherman's tenancy under the Whitehead contract was also extinguished. The title conveyed by the resale deed was a new and virgin title, and Sherman's continued occupancy of the land thereafter was not adverse as the tenant of anyone, nor adverse as to himself, because he entered the same under a contract recognizing the superior title of those from whom he rented. After the tax resale and the delivery of the resale deed Sherman's continued occupancy was simply that of an occupant without contract liable for the rent to the true owner. (41 O.S. 1941 §19.) The evidence conclusively establishes that Martin Bartlett never personally took possession of the land. There inheres in the judgment of the court a determination that Lashley was a bona fide purchaser for value and without notice, and there also inheres in the judgment a determination that Whitehead in collecting rents after the date of the deed to Martin Bartlett and before the execution and delivery

of the Lashley deed did not represent Martin Bartlett. These findings and determination are not clearly against the weight of the evidence. The continued occupancy of the land by this elderly negro was not notice to anyone of any claim which Martin Bartlett had to the premises.

The alleged claim of inadequacy of consideration paid to Schuman cannot be sustained for the reason that plaintiff knew of the sheriff's deed held by the Tulsa bank. He knew that as agent for said bank he collected the small rentals that were due from Sherman in 1933 under a written contract which he made with Sherman for the bank in May of 1933. He knew that there were only 40 acres of land which were tillable by reason of the oil operations being conducted thereon, and he knew that the extent of the title acquired by the bank under its sheriff's deed was undetermined and with these facts in mind he paid Schuman a consideration of $250 for his quitclaim deed. We think it cannot be said as a matter of law that this consideration under all of these circumstances was so inadequate as to place him on notice, and to destroy his claim of an innocent purchaser for value. He actually paid the bank $1,000 in 1934 for a quitclaim deed to clear his title.

It is true that plaintiff knew Schuman was not in actual possession of the land at the time he purchased it, but he did know that Schuman was the record owner at that time, and he had no notice, actual or by record, of any other claim to the land. No one being in adverse possession of the premises, he was justified in considering a conveyance of Schuman's virgin title to him as being a valid conveyance. We have found nothing in the evidence which refutes plaintiff's claim that he purchased from Schuman in good faith, without notice, and for value.

Defendants next contend that the deed under which plaintiff claims title was taken in violation of the cham-

perty laws of the State of Oklahoma and is void.

This contention by defendants is based on the provisions of 21 O.S. 1941 §548, and in numerous decisions of this court it has been definitely determined that the purpose of this statute is to protect an adverse claimant in possession of the premises, so that he may not suffer the consequences of useless litigation. There being no one in adverse possession at the time plaintiff took his deed from Schuman, the deed could not be champertous and this contention of defendants cannot be sustained. Lack of actual possession by Schuman, so long as no one held adverse to him, could not make the section of the statute relied on applicable to plaintiff's deed. This court has so held in the case of Webb v. Ketcham, 157 Okla. 294, 12 P. 2d 191, and in Evans v. Terrell, 189 Okla. 577, 118 P. 2d 244.

Defendants' next contention is that the deed from the First National Bank & Trust Company of Tulsa to plaintiff conveyed no interest in the surface of said land, the bank having acquired its deed subsequent to the tax sale. This is conceded.

Upon the witness stand, testifying in his own behalf, plaintiff admitted this to be true. He stated that he did not think the bank's deed conveyed any interest to him in the surface and he took the deed primarily because of the mineral interest which it conveyed. This did not strengthen defendants' contention for the reason that the resale deed conveyed the entire surface of the land, and the commissioners' deed contained no exceptions. It is immaterial whether the deed from the bank conveyed any portion of the surface to plaintiff.

Defendants next contend that the findings of fact and conclusions of law by the court are not responsive to the issues, are contrary to the evidence, and contrary to law.

303

This contention is based upon the fact that the court made no finding as to whether plaintiff was an innocent purchaser for value without notice of any adverse claim or as to Schuman's lack of possession for more than one year prior to his conveyance to plaintiff, or as to the interest conveyed to the bank by the sheriff's deed or the nature of the occupancy of Sherman.

In view of what we have heretofore said in reference to defendants' contentions under their second and third propositions, we see no necessity for an extended discussion of this contention. There inheres in the judgment rendered the necessary finding that plaintiff bought from Schuman in good faith and without notice and for a valuable consideration and that no one was in adverse possession when the sale was consummated. Any error of fact or law on the subject would be harmless because immaterial.

From what has been said it is obvious that the deed to Merrill S. Bartlett and the one to Jane A. Bartlett were champertous.

Affirmed.

WELCH, CORN, DAVISON, HALLEY, and JOHNSON, JJ., concur. LUTTRELL, V.C.J., and O'NEAL, J., dissent.